**William T. KUCHAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 87 C 11.**

United States District Court, N.D. Illinois, E.D.

Feb. 16, 1988.

---

Joseph A. Lamendella, Kris Daniel, Lamendella & Daniel, Chicago, Ill., for plaintiff.

Martin B. Lowery, Asst. U.S. Atty., Office of Special Litigation Tax Div., U.S. Dept. of Justice, Alice J. Davis, Noreene C. Stehlik, Washington, D.C., for defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This dispute concerns the interpretation and application of § 6701 of the Internal Revenue Code of 1954, as amended (the

"Code"). 26 U.S.C.A. It is presently before the court on defendant's motion for partial summary judgment and plaintiff's motion for summary judgment. For the reasons contained herein, defendant's motion is granted and plaintiff's motion is denied.

### FACTS

Plaintiff, William T. Kuchan, is a certified public accountant who provides tax and financial advice and reviews and prepares tax returns for his clients. He has been an accountant since 1952. On May 5, 1986, the Internal Revenue Service ("IRS") assessed penalties against plaintiff in the following amounts and for the following years: $95,000.00 for the taxable period ending December 31, 1983; $67,000.00 for the taxable period ending December 31, 1984; and, $29,000.00 for the taxable period ending December 31, 1985.

Each penalty was based on plaintiff's activities involving an investment plan offered by Price Coal & Energy, Inc. ("Price Coal"). The investment plan involved coal mining leases entered into by investors. This plan had been offered by Price Coal over a period of years, between 1977 and 1985. The IRS determined that the investment plan was an abusive tax shelter.

In May of 1981, Kuchan began to provide services to Rodman G. Price, individually, and Price Coal. Kuchan prepared Price's personal income tax returns and corporate tax returns for Price Coal. Plaintiff also prepared tax returns and, in 1983 and 1984, financial statements for Coal Funding Corporation, a corporation involved in the investment plan with Price Coal.

In 1983, 1984 and 1985, plaintiff prepared a "transmittal letter" that was to be sent to each of the investors in the Price Coal coal mining plan. Plaintiff prepared these transmittal letters at the request of, and as a service to, Rodman Price, the president of Price Coal. Plaintiff was paid for preparing these transmittal letters.

Plaintiff knew that the transmittal letters were to be attached to "Schedule C's" which Price Coal sent to each of the investors in their investment plan. Schedule C's are tax return documents that are to be filed by persons who claim profits or losses from business activities on their tax returns. Kuchan did not prepare any of the Schedule C's or income tax returns for any investor.

Kuchan's letter dated January 28, 1983, with respect to the 1982 Schedule C's, prepared on Kuchan's letterhead, is reproduced below:

"Dear Price Coal & Energy Lessee:

Enclosed please find a copy of Schedule C, Form 1040, Profit or (Loss) from Business or Profession. This indicates the amount of coal mining royalties for use as a deductible business expense in connection with the filing of your Federal Income Tax Return for the year ended December 31, 1982.

This is being transmitted to you in accordance with the information which has been provided by Price Coal & Energy, Inc.

Very truly yours,

/s/ William T. Kuchan"

With the exception of adding language that the Schedule C also related to "mine development expenses," the substance of the letters for tax years 1983 and 1984 were identical.

§ 6701, which plaintiff is alleged to have violated, provides in relevant part:

(a) Imposition of penalty.—Any person—

(1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document in connection with any matter arising under the internal revenue laws,

(2) who knows that such portion will be used in connection with any material matter arising under the internal revenue laws, and

(3) who knows that such portion (if so used) will result in an understatement of the liability for tax of another person, shall pay a penalty with respect to each such document in the amount determined under subsection (b).

(b) Amount of penalty.—

(1) In general.—... the amount of the penalty imposed by subsection (a) shall be $1,000.

26 U.S.C. § 6701. In determining the amount of the § 6701 penalty ultimately imposed on plaintiff, the IRS used listings of Price Coal's investors for 1982, 1983, and 1984, showing to whom the Schedule C's were to be sent. Over the three year period, there were 191 investors to whom the Schedule C's, with the accompanying transmittal letter, were sent.

### *Defendant's Motion for Partial Summary Judgment*

■ Defendant's motion is limited to a single issue: assuming plaintiff violated § 6701 by preparing the three transmittal letters to accompany the Schedule C's which were sent to 191 investors, was it proper to compute the penalty based on the number of Schedule C's to which the transmittal letter was attached and sent out? Without expressing any opinion as to whether plaintiff is liable for *any* penalty under § 6701, we find that the *method of computation* which the IRS used in this case is proper.

Although plaintiff prepared only three letters, he knew that each letter was to be duplicated and sent to each investor as a cover letter for the Schedule C's which Price Coal prepared. Under § 6701, if plaintiff is subject to the imposition of a penalty at all, he is so subject "with respect to each such document in the amount of ... $1,000." 26 U.S.C. § 6701(a) and (b). The "document" to which this language refers is "any portion of a return, affidavit, claim, or other document in connection with any matter arising under the internal revenue laws...." 26 U.S.C. § 6701(a)(1). Thus, assuming that plaintiff violated § 6701, he did so with respect to each Schedule C to which his letter referred and was attached. Therefore, the IRS properly calculated the amount of penalty for which plaintiff may be liable based on the number of investors to whom a Schedule C and plaintiff's transmittal letter were sent. Accordingly, defendant's motion for partial summary judgment on this single, narrow issue is granted.

### *Plaintiff's Motion for Summary Judgment*

Plaintiff contends that he is entitled to summary judgment for three reasons: (1) defendant imposed the penalties for the wrong taxable periods; (2) the statute of limitation bars the imposition of penalties for the taxable year ended December 31, 1982; and, (3) the essential element of "preparation" or "presentation" required by § 6701(a)(1) is not present under the facts of this case as a matter of law. We will discuss each issue *seriatim.*

■ Plaintiff's first argument is based on the erroneous assumption that § 6701(b)(3) requires that the penalty be imposed for the taxable period to which the underlying tax documents relate. In fact, § 6701 contains no provision fixing the taxable year for which the penalty must be imposed. § 6701(b)(3) merely limits the amount of the penalty by providing that any person subject to a penalty shall be penalized only once for documents relating to the same taxpayer for a single taxable period. Furthermore, simple logic dictates that the penalty should relate to the year in which the prohibited conduct occurs rather than the year for which the underlying tax document was prepared. The penalty is triggered by "any person's" act of aiding, assisting, procuring, or advising, not by the taxpayer's act of filing an understated return. In this case, plaintiff's allegedly offending letters were written and disseminated in 1983, 1984, and 1985. Thus, regardless of the underlying taxable years to which plaintiff's letters related, plaintiff's alleged unlawful conduct occurred in the years 1983, 1984, and 1985. Defendant did not err by assessing the penalty for the taxable years in which plaintiff allegedly violated § 6701.

■ Plaintiff's second argument is that the penalty assessed for 1983, even if assessed for the correct year, is barred by a three-year statute of limitation. Plaintiff asserts this limitation period based on § 6671(a), which states that penalties provided by subchapter B of Chapter 68 "shall

be assessed and collected in the same manner as taxes," and on § 6501(a), which provides that "the amount of any tax imposed by this title shall be assessed within 3 years *after the return was filed....*" (emphasis added). The main problem with applying § 6501(a) to penalties imposed under § 6701 is that § 6501(a) depends for its operation upon the filing of a tax return and, as discussed *infra*, § 6701 imposes no such requirement. Additionally, § 6703 entitled "Rules applicable to penalties under sections 6700, 6701, and 6702" makes no mention of any statute of limitation or § 6501.

The general rule is that statutes of limitation " 'barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the government.' " *Badaracco v. C.I.R.*, 464 U.S. 386, 392, 104 S.Ct. 756, 761, 78 L.Ed.2d 549 (1984), *quoting, Lucia v. U.S.*, 474 F.2d 565, 570 (5th Cir.1973). No period of limitation will run against the collection of taxes unless Congress consents to such a defense. *Lucia*, 474 F.2d, at 570. We find that Congress did not intend that § 6501(a) apply to the assessment of penalties under § 6701. Rather, § 6701 is analogous to other sections enacted to combat fraud which provide unlimited periods of limitation (e.g. 26 U.S.C. §§ 6653(b), 6694(b)). *See Id.*

Plaintiff's final argument is that, as a matter of law, his act of providing the letters in 1983, 1984 and 1985 did not constitute aiding, assisting in, or advising with respect to, the preparation or presentation of any portion of a return or other document in connection with any matter arising under the internal revenue laws. Plaintiff bases this argument on two primary contentions. First, plaintiff contends that his letter could not have had any effect on the "preparation" of the Schedule C's since they were prepared by Price Coal, nor could it have affected the "preparation" of the investors' returns since the investors had been informed from the start by Price Coal as to the nature and amount of deduction to which they were entitled. Second, plaintiff contends that "presentation" is a term of art and, as defined in § 7206(2) (the criminal counterpart to § 6701), means filing with the IRS. Neither position is persuasive.

In his deposition, plaintiff testified that he did not personally prepare or review the Schedule C's to which his letters referred. Yet, his letters informed the investors to whom they were sent that the "[e]nclosed ... Schedule C ... indicate[d] the amount ... for use as a deductible business expense in connection with the filing of [their] Federal Income Tax Return...." Read fairly, plaintiff's letter advised the investors that in preparing their returns they were entitled to deduct the amount shown in the pre-prepared Schedule C. Clearly, it is possible to "advise with respect to the preparation" of a portion of a document without physically preparing such document.

Plaintiff's second contention is based on an equally strained interpretation of the term "presentation." Plaintiff's reliance on cases interpreting 26 U.S.C. § 7206(2) is misplaced. That section provides:

Any person who—

(2) Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document; ...

shall be guilty of a felony....

26 U.S.C. § 7206. The glaring difference between the language of this section and § 6701 is the omission of the phrase "(if so used)." This language is part of the third requirement for imposing § 6701 liability which provides that the individual "knows that such portion (*if so used*) will result in an understatement of the liability for tax of another person." 26 U.S.C. § 6701(a)(3) (emphasis added). Plaintiff argues that we should regard this language as establishing a condition precedent that such portion

*must be* so used before liability may be imposed. Quite the contrary, we find that the addition of the phrase "if so used" in the civil counterpart to § 7206(2) is evidence that the intent of Congress was to impose liability for the act of aiding, assisting, procuring, or advising in a prohibited manner regardless of whether any document is ever filed at all.

The legislative history of ·§ 6701 supports this interpretation. The Senate Finance Committee stated four reasons for enacting § 6701, including to "permit more effective enforcement of the tax laws by discouraging those who would aid others in the fraudulent underpayment of their tax" and to "help protect taxpayers from advisors who seek to profit by leading innocent taxpayers into fraudulent conduct." 1982 U.S.Code Cong. & Adm.News 781, at 1022. The use of the phrases "who *would* aid others" and "who *seek* to profit", like the phrase "(*if* so used)", indicates that it was the intent of Congress to punish conduct intended to result in a violation of the tax laws whether or not the underlying violation ever actually occurs. Thus, one who violates the express prohibitions of § 6701 will not be absolved of liability for his own wrongdoing merely because the taxpayer he intended to lead astray subsequently receives better advice and does not file the understated return. In short, liability attaches under § 6701 as soon as the three prerequisites are met regardless of whether the ill-advised taxpayer ever files the understated return.

In conclusion, assuming, without deciding, that plaintiff's conduct is subject to § 6701 penalties, the IRS correctly based the amount of the penalty on the number of Schedule C's sent out which plaintiff's letter accompanied. Additionally, the penalties were properly assessed for the taxable years in which plaintiff's allegedly prohibited conduct occurred. Finally, giving effect to the plain language of the statute, § 6701 does not require the filing of an understated return as a prerequisite to the imposition of a penalty thereunder. Therefore, the three-year limitation period provided by § 6501(a), which requires the filing of a return to set the clock in motion,

cannot logically govern penalties imposed under § 6701. Rather, like other civil fraud provisions, enforcement of § 6701 is not confined to any limitations period whatsoever. Accordingly, defendant's motion for partial summary judgment is granted and plaintiff's motion is denied.